OPINION
Defendant-appellant Mark V. Christenson appeals his conviction and sentence from the Delaware County Court of Common Pleas on one count of Nonsupport of a Dependent in violation of R.C.2919.21(A)(2). Plaintiff appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On July 10, 1998, the Delaware County Grand Jury indicted appellant on one count of Nonsupport or Contributing to Nonsupport of Dependents in violation of R.C. 2919.21(A)(2), a felony of the fifth degree. The indictment stated that appellant, during the period from April 20, 1996, through April 17, 1998, "did, abandon or fail to provide adequate support as required by law for Katie Starr Christenson, DOB: 4/22/80 his legitimate or illegitimate child under 18 years of age, whom the Defendant is legally obligated to support."
According to the indictment, appellant failed to pay support for a total accumulated period of 26 weeks out of 104 consecutive weeks. At his arraignment on August 17, 1998, appellant entered a plea of not guilty to the charge contained in the indictment. After a waiver of jury trial was filed on December 18, 1998, a bench trial was held on such date. The following evidence was adduced at trial. During their marriage, Jill Smoot and appellant had one child, a daughter named Katie who was born on April 22, 1980. The two were divorced in 1987 after appellant filed a complaint for divorce in Dallas, Texas, which is where the two were living during their marriage. At the time of the divorce, Smoot was given custody of Katie while appellant was granted visitation rights and was ordered to pay $350.00 per month in child support through the Texas court system plus all of his daughter's medical expenses. At trial, Smoot testified that appellant made two $350.00 child support payments early on, one shortly before the divorce and then one shortly afterwards, and that child support had been withheld from appellant's checks during the last three months of 1998. At the time of the divorce, Smoot was living in Flint, Michigan, where she resided until she moved to Atlanta, Georgia, in 1988. Approximately a year after the divorce, appellant moved to Ohio. Smoot, however, only lived in Atlanta for approximately six months before returning to Flint, Michigan. In 1991, Smoot moved to Seattle, Washington where she resided for three and a half years. Thereafter, in November of 1994, Smoot moved to Scottsdale, Arizona. Smoot returned to Flint, Michigan in June of 1995 where she was residing at the time of the trial. From just after the parties' divorce until November of 1997, appellant did not see his daughter. Appellant testified at trial that his numerous attempts to locate his daughter were unsuccessful until shortly before Thanksgiving of 1997 when he got her phone number and address. At trial, Smoot testified that she had not called or written to appellant since 1990. Smoot, however, also testified that although she had lived in several different places since the parties' divorce, her sister has lived at the same address for 17 years and that appellant knew how to contact her sister. At the conclusion of the evidence, the trial court found appellant guilty of Nonsupport of a Dependent in violation of R.C. 2919.21(A)(2). The trial court specifically found that, during the period from April 20, 1996, through April 17, 1998, appellant had failed to provide adequate support to his daughter and that appellant's failure to provide support included a time period of 26 weeks out of 104 consecutive weeks. A Judgment Entry, memorializing the trial court's verdict was filed on December 24, 1998. On January 19, 1999, the Delaware County Child Support Enforcement Agency filed a "Statement of Compliance with O.R.C. 3113.04" stating that, as of December 17, 1998, appellant had a total child support arrearage of $44,939.78. The agency requested that appellant be ordered to pay a total of $748.09 per month for 60 months to the Child Support Enforcement Agency to eliminate the arrearage. On February 1, 1999, appellant was sentenced to five years of community control, ordered to serve 45 days each in the Delaware County Jail and on house arrest. Appellant was also ordered to pay the sum of $44,053.47, through the Delaware County Support Enforcement Agency at the rate of $734.22 per month plus 2% poundage. A Judgment Entry of Sentence was filed on February 1, 1999. It is from his conviction and sentence that appellant prosecutes his appeal, raising the following assignments of error:
 I APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE EVIDENCE AND THE COURT'S FINDINGS OF FACT.
 II APPELLANT'S CONVICTION WAS NOT SUPPORTED UNDER THE DOCTRINE OF IMPOSSIBILITY.
 III THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING THAT THE DOCTRINE OF LACHES DID NOT APPLY IN THIS CASE.
 IV THE COURT ERRED IN ORDERING APPELLANT TO MAKE RESTITUTION OF A CHILD SUPPORT ARREARAGE TO A FORMER SPOUSE AS PART OF THE SENTENCE IMPOSED.
 V THE SENTENCE IMPOSED ON APPELLANT WAS EXCESSIVE BECAUSE IT WAS BASED ON THE AMOUNT OF AN ALLEGED CHILD SUPPORT ARREARAGE.
 I
Appellant, in his first assignment of error, maintains that his conviction for nonsupport of a dependent in violation of R.C.2919.21(A)(2) is against both the sufficiency of the evidence and the manifest weight of the evidence. In State v. Jenks (1981),61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. We find, as a matter of law, that appellant's conviction for felony nonsupport of a dependent in violation of R.C. 2919.21(A)(2) was based on insufficient evidence and is against the manifest weight of the evidence. Revised Code Section 2919.21(A)(2) states in part "No person shall abandon, or fail to provide adequate support to the person's child who is under eighteen . ." Section (G)(1) states in part: "Except as otherwise provided in this division, whoever violates division (A) or (B) of this section is guilty of nonsupport of dependents, a misdemeanor of the first degree. . . . if the offender has failed to provide support under division (A)(2) or (B) of this section for a total accumulated period of twenty-six weeks out of one hundred four consecutive weeks, whether or not the twenty-six weeks were consecutive, then a violation of division (A)(2) or (B) of this section is a felony of the fifth degree . . . ." R.C. 2919.21(D) lists inability to provide adequate support as an affirmative defense to a charge of nonsupport. The indictment in the case sub judice indicates that appellant, during the period from April 20, 1996, through April 17, 1998, failed to provide adequate support for his daughter and that such failure to pay included a total accumulated period of 26 weeks out of 104 consecutive weeks. While there is evidence supporting the trial court's conclusion that during such period, appellant's failure to pay included a total accumulated period of 26 weeks out of 104 consecutive weeks, there also is ample evidence that until November of 1997, appellant was unable to locate his daughter and unsure of where to send child support payments because of his ex-wife's frequent address changes. At trial, appellant testified that letters sent to his daughter's maternal grandmother were sent back to him and that his attorney "has been working on it for four years to try to find her." Transcript of Proceedings at 59. Appellant also testified that he tried to contact Smoot's mother, "but she had moved, and that's the only relative that I knew to contact." Id. In March of 1995, appellant had received a notice from RSI Enterprises, Inc. in Phoenix, Arizona, a collection agency, directing him to send his child support payments to the Maricopa County Clerk of Courts in Phoenix. However, after appellant mailed a check to Arizona as a result of the request, a check in the amount of $136.44 was issued to appellant on August 16, 1996, by the Maricopa County Superior Court. Appellant testified that the check was a return of the money that he sent. Moreover, the trial court clearly recognized that appellant did not know where his daughter resided, stating as follows at the conclusion of the December 18, 1998, trial: ". . . Probably the most damning evidence here is the fact that even after he discovered where she lived, for 20 weeks at least, he didn't pay any support. The 20 weeks being the 20 weeks within the period of the indictment, he still didn't pay support, even though that's six weeks short. There was another six weeks even if he didn't know where she was, he didn't pay." Transcript of Proceedings at 85. (Emphasis added).
The trial court further noted that Smoot had known for some time where appellant lived and that "[s]he certainly could have contacted him and said, here's where we are, send the money. And she didn't do that." Transcript of Proceedings, at 86. The 20 week period referred to by the trial court is the period from November of 1997, when appellant located his daughter, until April 17, 1998, the last day covered by the indictment. As the trial court concedes, this is six weeks short of meeting the required 26 weeks for felony nonsupport. Furthermore, the trial court found that while "the evidence is clear that [appellant's] former wife, Miss Smoot, did not want him to know where she was" the evidence was also clear that appellant "did attempt to discover where his daughter was." Transcript of Proceedings at 84-85. In short, this court finds that there is no evidence that appellant, during the relevant period of time and after he discovered where his daughter resided, failed to pay child support for 26 weeks out of 104 consecutive weeks. Rather, appellant, by a preponderance of the evidence has established the affirmative defense that he was unable to provide adequate support because he did not know where to send the support money. Revised Code Section 2919.21 (D) sets forth the following affirmative defense: "It is an affirmative defense to a charge of failure to provide adequate support . . . that the accused was unable to provide adequate support . . . but did provide the support that was within the accused's ability and means." Generally, this defense is interpreted as applying to an assessment of the defendant's financial ability to pay and/or defendant's ability to work. However, since criminal statutes are to be construed strictly against the State, we find that the inability to pay affirmative defense applies to the situation in which the defendant can prove by a preponderance of the evidence that, through no fault of his own, he was unable to provide support because he did not know where to send the support monies. However, there was sufficient evidence to find appellant guilty of criminal non-support without the felony enhancement. The evidence is clear that the appellant failed to pay child support during a twenty week time period in which he knew where his daughter was and where he could have sent support. Therefore, this matter should be remanded to the trial court to enter a judgment of conviction for criminal nonsupport under 2919.21(A)(2) without the felony enhancement found in 2919.21(G) and for re-sentencing. Because appellant's conviction for felony nonsupport was based on insufficient evidence and is against the manifest weight of the evidence, appellant's first assignment of error is sustained.
 II
Appellant in his second assignment of error, contends that his conviction was not supported under the doctrine of impossibility. Appellant specifically contends that it was impossible for him to pay child support for his daughter prior to November of 1997 since he did not know where she was located until such time. Based on this court's finding with respect to appellant's first assignment of error, appellant's second assignment of error is moot.
 III
In his third assignment of error, appellant argues that the trial court erred in finding that the doctrine of laches was not applicable to prosecutions for criminal offenses. Laches has been defined as an "omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." Connin v. Bailey (1984), 15 Ohio St.3d 34, 35, quoting Smith v. Smith (1959), 168 Ohio St. 447. In Smith, the Supreme Court listed the following elements of laches: " `Conduct on the part of the defendant * * * giving rise to the situation of which complaint is made and for which the complainant seeks a remedy * * *; (2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of defendant's conduct and having been afforded an opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit; and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant.'" 168 Ohio St. at 455, 156 N.E.2d (quoting 19 American Jurisprudence [1939] 343, Equity, Section 498).
"[i]n order to successfully prosecute a claim of laches, the party asserting the claim must show that he has been materially prejudiced by the delay of the adverse party in asserting his rights." Smith, supra. at 455.
Appellant cites the case of Davis v. Davis (1995), Morrow App. No. CA 817, unreported, for the proposition that the doctrine of laches is applicable to arrearages in child support. Unlike Davis, however, the case sub judice is a criminal nonsupport case. Since criminal prosecutions are initiated and prosecuted by the State of Ohio rather than the custodial parent, the doctrine of laches is not applicable. Appellant's third assignment of error is overruled.
 IV
Appellant, in his fourth assignment of error, claims that the trial court erred in ordering him to make restitution of child support arrearages as a condition of probation. R.C. 2929.21(E) governs the authority of a trial court to order restitution for a misdemeanor. Pursuant to such section, a court may order a person convicted of a misdemeanor to make restitution for property damage caused by a defendant's offense and for the value of property that is the subject of a defendant's theft offense, as defined in R.C.2913.01(K). However, the term "property damage" as used in R.C.2929.21(E) does not include past due child support. See State v. Herring (1993), 88 Ohio App.3d 228, 229 and State v. Ashley (1991), 74 Ohio App.3d 92. Moreover, nonsupport is not a "theft offense" defined in R.C. 2913.01(K). See Herring, supra. The trial court, therefore, lacked authority to order appellant to pay past due child support as part of his sentence under 2929.21(E). However, appellant, in the case sub judice, was not ordered to pay restitution for past due child support as part of his sentence, but rather as a condition of his probation. A trial court can order child support as a condition of probation. See Herring, supra. and State v. Lizanich (1994), 93 Ohio App.3d 706. Ordering such restitution as a condition of probation is proper since it is reasonably related to rehabilitating appellant, has a relationship to the crime of which appellant was convicted, which, in this case, is nonsupport, and relates "to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." State v. Jones (1990), 49 Ohio St.3d 51, 53. However, if a trial court orders restitution of past due child support or payment of current child support as a condition of probation, such amounts must be determined through civil proceedings pursuant to R.C. 3113.04. Such section provides, in relevant part, as follows: "(A) Sentence may be suspended if a person, after conviction under section 2919.21 of the Revised Code and before sentence under that section, appears before the court of common pleas in which the conviction took place and enters into bond to the state in a sum fixed by the court at not less than five hundred nor more than one thousand dollars, with sureties approved by the court, conditioned that the person will furnish the child or other dependent with necessary or proper home, care, food, and clothing, or will pay promptly each week for such purpose to the division of child support in the department of human services, a sum to be fixed by the agency. The child support enforcement agency shall comply with sections 3113.21 to 3113.219
[3113.21.9] of the Revised Code when it fixes the sum to be paid." (Emphasis added.)
While such section appears to concern the setting of current support payments, we believe that it is equally applicable to a determination of the amount of child support arrearages. In the case sub judice, the Child Support Enforcement Agency filed a "Statement of Compliance with O.R.C. 3113.04" on January 19, 1999, indicating that appellant had a total child support arrearage of $44,939.78 and requesting that appellant be ordered to pay a total of $748.90 per month for sixty months to the Child Support Enforcement Agency. While R.C. 3113.04 does not expressly provide for an evidentiary hearing, such section cannot be read in a vacuum but rather must be read in conjunction with the other provisions in O.R.C. Chapter 3113 so as to entitle appellant to due process in setting a current support amount, establishing a total arrearage amount and/or establishing a payment schedule on the arrearage amount. Administrative hearings are usually held in these cases and an obligor has an opportunity to be heard. An obligor can object to administrative recommendations by fling an objection with the appropriate division of the trial court. A court hearing will then be held and an evidentiary hearing will also be held if necessary to resolve factual disputes. Under any circumstances, the obligor (as well as the obligee) would have an opportunity to contest administrative actions in the trial court. At an evidentiary hearing, appellant would be able to raise numerous defenses that he could not raise before the trial court in this criminal matter, including the defenses of laches, miscalculation, and assessment of interest. Once the amount of child support arrearages is determined in a civil proceeding, the trial court in this matter could then adopt the civil court's order regarding the payment schedule on the arrearages as a condition of probation. Although a defendant is entitled to a hearing to determine the amount of arrearage, as discussed supra, appellant herein neither requested a hearing nor objected to the trial court's acceptance of the Child Support Enforcement Agency's Statement of Compliance at the sentencing hearing. Having failed to do so, appellant waived any error with regard to the amount of child support to be paid as a condition of probation Appellant's fourth assignment of error is overruled.
 V
In his final assignment of error, appellant asserts that his sentence was excessive because it was based on the amount of the alleged child support arrearage. The trial court, in sentencing appellant, stressed that his case was "a little more egregious" than others because of the amount of unpaid child support. However, since this court has reversed appellant's conviction for felony nonsupport, appellant's final assignment of error is moot. The Judgment of the Delaware County Court of Common Pleas is reversed and this matter is remanded for the trial court to enter a Judgment of Conviction of the misdemeanor level of 2919.21(A)(2) and for resentencing.
By Hoffman, J. Wise, P.J. concur Edward, J. dissents.